320 So.2d 714

Theodore Benjamin **NELSON**

v.

**STATE.**

I Div. 574.

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Floyd Minor, Montgomery, for appellant.

**210**

William J. Baxley, Atty. Gen., and Milton C. Davis, Asst. Atty. Gen., for the State.

TYSON, Judge.

The two-count indictment charged the appellant with the second degree burglary of the dwelling house of Pauline Cooley, and buying, receiving, concealing, or aiding in concealing, a deep freeze and a television set of the aggregate value of $800.00, the personal property of Pauline Cooley, knowing that said property was stolen, or having reasonable grounds for believing that it was stolen and not having the intent to restore it to the owner. The jury's verdict found the appellant "guilty of receiving and concealing stolen property as charged in Count Two of the indictment," and the trial court then adjudged the appellant guilty, setting sentence at eight years imprisonment in the penitentiary.

Pauline Cooley testified that she lived at 1007 Tennessee Street in Mobile; that she left home on the night of September 7, 1974. She stated that when she returned, she discovered that her front door had been broken into and her brown deep freeze, her television, and a radio were all missing. Ms. Cooley further testified that she did not know the appellant, Theodore Nelson, and that she had not given him permission to go into her home; that she had locked all of the doors and windows before leaving the house. She stated that around 2:30 a. m. she accompanied the police to Creola Bumpers' sister's house where she saw her deep freeze and pointed it out to the officers. She found her television set about a week later at her sister-in-law's house.

Creola Bumpers testified that she lived at 1601 Robert E. Lee Street, but that on the night of September 7, 1974, at around 10:00 or 11:00 o'clock, she was at her sister's house, located at 1353 Antwerp Street. She stated that "Bodine" and three other black men brought a deep freeze to her sister's house; that "Bodine" had called her earlier and asked if he could leave it at her house until he had a chance to move it to his mother's house. She told him that she had no room for it at her house, but that he could bring it over to her sister's house. Ms. Bumpers testified that she told a policeman, who was parked in front of her sister's house, that the men were moving the freezer for their mother. On cross-examination, she testified that the appellant, Theodore Nelson, was not one of the four men who helped carry the freezer into her sister's house. On re-direct, Ms. Bumpers admitted that there were other men who remained in the car while the freezer was being carried inside, and that she did not get a good look at them.

Charles Dixon, a police patrolman with the city of Mobile, testified that he observed the appellant on the night of September 7, 1974, with two other men in an Oldsmobile around midnight at the intersection of Melrose and Ann Streets. Officer Dixon stated that the trunk lid of the car in which appellant was riding was up and there was a freezer in the trunk which appeared to be cold as there was a "smoke of frost" coming from the trunk. He followed the automobile to 1353 Antwerp where it stopped, and a lady came out in the yard. She told him that the men in the Oldsmobile were moving the freezer for their mother. Dixon testified that he saw the appellant, Theodore Nelson, get out of the right front passenger side of the automobile. He stated that he was also present two or three hours later when Officers Pinkney and Taylor arrested the appellant at his apartment on Lott Street, at which time he observed the same Oldsmobile that he had seen earlier at 1353 Antwerp. Dix-

on testified that he found a brown paint on the edges of the trunk area and a piece of rope tied to the trunk lid. He said that he had noticed the same rope, tied to the trunk in the same fashion, earlier in the evening.

Detective Sergeant James Taylor of the Mobile Police Department testified that he arrested the appellant at his residence at 504 Lott Street around 4:00 a. m. on September 8, 1974. At the time of the arrest, he noticed a maroon Oldsmobile with a black top in appellant's driveway and discovered brown paint scrapings in the area of the trunk lid. Taylor's testimony concluded the State's case, and appellant's motion to exclude the State's evidence was denied by the trial court.

The defense produced four witnesses, each of whom testified that he or she was at the appellant's home playing cards on the night of September 7, 1974, that the game lasted from 9:00 p. m. until 1:00 a. m., during which time no one, including the appellant, who was also present, left the house.

John Evans testified that his nickname was "Bodine" and that he was arrested on September 7, 1974, in connection with a stolen deep freeze and television, the property of Pauline Cooley. Evans stated that he first came into contact with the freezer and television when one Arthur Martin asked him to help move them on the night of September 7, 1974. He said that after talking to Martin, he went to appellant's apartment around 10:00 p. m. and borrowed his car in order to move the freezer and television, but that the appellant did not accompany him. Next, he called Creola Bumpers, told her that he and his "old lady" had had an argument, asked her if he could keep their freezer at her house until he could move it to his mother's house. He said Creola told him that there was no room at her house, but that he could bring the freezer to her sister's house. Evans testified that he and Martin picked up two other men who helped them move the free-

zer to Creola Bumpers' sister's house. When they arrived at the sister's house, Creola came out in the front yard and told a policeman that had been following them that they were moving the freezer for their mother. Evans said that after the policeman drove away and they had taken the freezer inside, he dropped the other three men off and returned the car to the appellant's apartment.

On cross-examination, Evans admitted that he had been convicted in this case. He also stated that he had known the appellant, Theodore Nelson, for ten or eleven years.

Appellant's request for the affirmative charge was denied.

## I

In view of the appellant's motion to exclude at the close of the State's case and request in writing for the affirmative charge, the weight and sufficiency of the evidence is now before us for review.

A judgment of conviction for buying, receiving, or concealing stolen property will be reversed absent proof of the value of the property. *Curtis v. State,* 44 Ala.App. 335, 208 So.2d 245; *Padgett v. State,* 44 Ala.App. 548, 216 So.2d 187.

One convicted of buying, receiving, or concealing stolen property is punished as if he had stolen it. Title 14, Section 338, Code of Alabama 1940. Therefore, the value of the property must be proven in order to determine whether a convicted defendant should be punished for grand or petit larceny.

As stated by Chief Justice Tyson for the Supreme Court of Alabama in *Booker v. State,* 151 Ala. 97, 44 So. 56 (1907):

"There was no proof of the value of the property. Under the statute the offender must be punished as if he had stolen it. Proof of value was, therefore, necessary

to a conviction, in order to determine whether the punishment should be that prescribed for petit larceny or grand larceny."

In the instant case we have carefully searched the record, but have found no testimony whatsoever as to the value of the freezer or television set. Therefore, for the reasons stated, the judgment of conviction is due to be reversed and the cause is hereby remanded.

Reversed and remanded.

All the Judges concur.