Rel: June 28, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

————————————————

## CR-2023-0108

————————————————

### Christopher Denell Calloway

### v.

### State of Alabama

### Appeal from Tuscaloosa Circuit Court
### (CC-17-1918.01)

On Application for Rehearing

MINOR, Judge.

The opinion issued by this Court on March 22, 2024, is withdrawn and the following is substituted therefor.

In this appeal, Christopher Denell Calloway asks us to determine whether the State presented sufficient evidence of value of the stolen

property to support his conviction for first-degree receiving stolen property, see § 13A-8-17, Ala. Code 1975. Calloway also challenges his conviction for first-degree robbery, see § 13A-8-41, Ala. Code 1975, and his resulting sentence of life imprisonment. We affirm Calloway's conviction for first-degree robbery and his resulting sentence. Because the State presented no evidence of value of the stolen property, however, we reverse Calloway's conviction and sentence for first-degree receiving stolen property.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of December 28, 2016, Calloway and his codefendant, Stephanie Robinson, collided the Chevrolet Sonic automobile Calloway was driving into the back of Alice Barnette's Chevrolet Traverse sport-utility vehicle while Barnette was stopped at a red light on McFarland Boulevard in Tuscaloosa.

After the collision, Calloway approached the driver's side door of Barnette's vehicle, opened it, and asked Barnette if she was okay. Barnette told Calloway that she needed her cell phone, to which Calloway stated that he had called 911. At that time, Robinson approached the passenger side door of Barnette's vehicle. Calloway stated, "[T]hat's my

wife, she's pregnant, do you mind if she sits down?" (R. 165-66), to which Barnette said that she did not. Robinson then gathered the items that had fallen onto the floorboard, put those items in Barnette's purse, and put the purse under Robinson's arm. Calloway told Barnette to get out of the vehicle, but Barnette refused to do so. Calloway then stated, "I'm not going back to F'ing jail," (R. 172), pulled out a gun, hit Barnette on the back of the head, and threw her to the ground. Calloway and Robinson then drove off in Barnette's vehicle. Calloway and Robinson were later apprehended in Mississippi.

Investigator Jedediah Kind, with the Tuscaloosa Police Department, took custody of the 2012 Chevrolet Sonic that Calloway and Robinson had been driving before the collision and ran its vehicle-identification number. Investigator Kind found that the vehicle belonged to Mathies Porter, a resident of South Carolina, and that he had reported the vehicle stolen earlier that month.

Porter testified that on December 11, he saw a female, whom he only knew as "Stephanie," (R. 268), and an unknown male walking toward a gas station. Porter picked them up and took them to the gas station. While there, "Stephanie" or Robinson stole several cases of beer.

3

Robinson jumped in the vehicle and told Porter, "[L]et's go, let's go, let's go" (R. 270), but Porter told Robinson to take the beer back inside. When Robinson refused to do so, Porter took a case of beer back inside. While Porter was inside, Robinson jumped in the driver's seat and she, along with the male, who had not left the vehicle, drove off.

Porter testified that he had not seen his vehicle, which he described as "a little old four-cylinder five-speed, [that] didn't burn no gas" (R. 271), until the current robbery in Tuscaloosa. After his recollection was refreshed with a police report he had made after the vehicle was stolen, Porter recalled that he reported to police that a black male named "Chris" had stolen his Chevrolet Sonic. (R. 275-77.) Porter also made an in-court identification of Calloway.[1]

After the State's case-in-chief, Calloway moved for a judgment of acquittal, arguing that "[t]he State[] failed to reach their burden and the elements required to prove robbery first degree and receiving stolen property first degree." (R. 325.) The circuit court denied Calloway's

---

[1]Investigator Preston Grammer, with the Tuscaloosa Police Department, obtained a warrant to secure Calloway's DNA, which he did. Ellas Aldrick, employed by the Alabama Department of Forensic Sciences, analyzed that DNA and determined that it matched the DNA profile on a cigarette butt and a toboggan hat found in the stolen vehicle.

4

motion. At the close of all the evidence, Calloway renewed his motion for a judgment of acquittal, which was again denied. This appeal followed.

## I. CALLOWAY'S CONVICTION FOR FIRST-DEGREE RECEIVING STOLEN PROPERTY

Calloway argues that the State failed to produce sufficient evidence to support his conviction for first-degree receiving stolen property as to the Chevrolet Sonic because, he says, "[the State] did not present any evidence establishing the value of the property at issue." (Calloway's brief, p. 14.) We agree.

> "'"'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). '"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). '"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the

trial court's decision." ' Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998) (quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990)). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978)." ' "

Caver v. State, [Ms. CR-21-0333, Dec. 16, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022).

Section 13A-8-17(a), Ala. Code 1975, provides: "Receiving stolen property which exceeds two thousand five hundred dollars ($2,500) in value constitutes receiving stolen property in the first degree." Section 13A-8-1(15), Ala. Code 1975, defines "value" as "[t]he market value of the property at the time and place of the criminal act."

"A judgment of conviction for buying, receiving, or concealing stolen property will be reversed absent proof of the value of the property. Curtis v. State, 44 Ala. App. 335, 208 So. 2d 245; Padgett v. State, 44 Ala. App. 548, 216 So.2d 187.

"One convicted of buying, receiving, or concealing stolen property is punished as if he had stolen it. Title 14, Section 338, Code of Alabama 1940. Therefore, the value of the property must be proven in order to determine whether a convicted defendant should be punished for grand or petit larceny.

"As stated by Chief Justice Tyson for the Supreme Court of Alabama in Booker v. State, 151 Ala. 97, 44 So. 56 (1907):

6

> " 'There was no proof of the value of the property. Under the statute the offender must be punished as if he had stolen it. Proof of value was, therefore, necessary to a conviction, in order to determine whether the punishment should be that prescribed for petit larceny or grand larceny.'
>
> "In the instant case we have carefully searched the record, but have found no testimony whatsoever as to the value of the freezer or television set. Therefore, for the reasons stated, the judgment of conviction is due to be reversed and the cause is hereby remanded."

Nelson v. State, 56 Ala. App. 209, 211–12, 320 So. 2d 714, 716 (Crim. App. 1975).

The State presented no admitted evidence of the value of the stolen Chevrolet Sonic. Although the State pointed out that the index of exhibits contained in the record shows that Exhibit 56, which reflected that the Chevrolet Sonic had a value of $8,000, was admitted (C. 106, 222-23), the index of exhibits does not control over the actual transcript. And the transcript of the trial does not show that Exhibit 56 was admitted.[2] (R.

---

[2]We note that Exhibit 56 was used to refresh Porter's recollection, but it was not admitted. The State concedes that, if Exhibit 56 was not admitted, there was insufficient evidence to support Calloway's conviction for first-degree receiving stolen property. (State's brief, p. 9 ("Alternatively, if the police report [Exhibit 56] was not properly received into evidence, then this Court should reverse Calloway's conviction for receiving stolen property in the first degree because the State failed to

7

275.) Thus, Calloway's conviction for first-degree receiving stolen property is due to be reversed. See Nelson, supra.

## II. CALLOWAY'S CONVICTION FOR FIRST-DEGREE ROBBERY

As for Calloway's conviction for first-degree robbery, Calloway makes two arguments: (1) that the indictment charging first-degree robbery was defective because, he says, "the addition of an alternative element that significantly and erroneously reduced the State's burden effectively nullified a necessary element of the crime," and (2) that the

---

present any other evidence proving the value of the stolen vehicle as required by Section 13A-8-17.").)

On rehearing, the State reverses course and now argues that it did not have to prove the value of the vehicle. "The general rule is that a party may not assume inconsistent positions at trial and on appeal, see, e.g., Ex parte Sharp, 151 So. 3d 329, 337 (Ala. 2009), and we believe that applies equally to a party assuming inconsistent positions on original submission and on rehearing in this Court." L.M.L. v. State, [Ms. CR-20-0157, Aug. 5, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (plurality opinion on application for rehearing). Even if the State had not taken inconsistent positions, however, we still could not consider its arguments on rehearing. See, e.g., Water Works & Sewer Bd. of City of Selma v. Randolph, 833 So. 2d 604, 608-09 (Ala. 2002) ("'"We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing."' ... We are constrained to deny the application. The question of the effect of the portion of the statute on which Randolph relies for the first time on application for rehearing on entities such as The Water Works and Sewer Board of the City of Selma will have to await another day.").

circuit court erred by granting the State's requested jury instruction because, he says, "it improperly led the jury to believe that it was irrelevant whether Calloway actually had a gun." (Calloway's brief, p. ii.) Neither issue, however, is preserved for appellate review.

As for Calloway's first argument, the record shows that Calloway did not object to the indictment. See Calhoun v. State, 932 So. 2d 923, 936 (Ala. Crim. App. 2005); and Rules 15.2(a) and (c), Ala. R. Crim. P. Thus, Calloway is due no relief.

As for Calloway's second argument, during the charge conference, the State requested that the circuit court charge the jury that "[I]t is not necessary to prove that an accused person displayed a gun during a robbery or that he actually had a gun in his possession in order to sustain a conviction for robbery in the first degree." (C. 65, R. 373.) In response, Calloway argued: "We just want to give the pattern [jury instruction]." (R. 373.)

Based on that, we cannot say that Calloway sufficiently preserved his argument that the circuit court's jury instruction was misleading.

> "'Review on appeal is restricted to questions and issues properly and timely raised at trial.' Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989). 'An issue raised for the first time on

9

> appeal is not subject to appellate review because it has not been properly preserved and presented.' Pate v. State, 601 So. 2d 210, 213 (Ala. Crim. App. 1992). '"[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof."' McKinney v. State, 654 So. 2d 95, 99 (Ala. Crim. App. 1995) (citation omitted). 'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So. 2d 880, 882 (Ala. 1987). 'The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.' Ex parte Works, 640 So. 2d 1056, 1058 (Ala.1994)."

Ex parte Coulliette, 857 So. 2d 793, 794-95 (Ala. 2003). Thus, Calloway is due no relief.

## CONCLUSION

For these reasons, we reverse Calloway's conviction and sentence for first-degree receiving stolen property and remand this case to the circuit court for that court to set aside that conviction and sentence. We affirm Calloway's conviction of first-degree robbery and his resulting sentence of life imprisonment.

APPLICATION OVERRULED; OPINION OF MARCH 22, 2024, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Kellum and Cole, JJ., concur. Windom, P.J., and McCool, J., concur in the result.